Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 0733 | **DATE** | 8/23/2000 |
| **CASE TITLE** | MARIE McGOWAN vs. THE PALMER HOUSE HILTON HOTEL COMPANY | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] The motion for summary judgment [17-1] is granted. Judgment is entered for defendant The Palmer House Hilton Hotel Company and against plaintiff Marie McGowan. ENTER MEMORANDUM OPINION AND ORDER.

*Suzanne B. Conlon*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | number of notices | |
| | No notices required. | | |
| ✓ | Notices mailed by judge's staff. | AUG 2 4 2000 date docketed | 33 |
| | Notified counsel by telephone. | | |
| ✓ | Docketing to mail notices. | *eaw* docketing deputy initials | |
| ✓ | Mail AO 450 form. | ED-7 FILED FOR DOCKETING | 8/23/2000 date mailed notice |
| | Copy to judge/magistrate judge. | 00 AUG 23 PM 6: 44 | jad mailing deputy initials |
| SB | courtroom deputy's initials | Date/time received in central Clerk's Office | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARIE McGOWAN, | ) | |
| | ) | |
| Plaintiff, | ) | No. 00 C 0733 |
| | ) | |
| v. | ) | Suzanne B. Conlon, Judge |
| | ) | |
| THE PALMER HOUSE HILTON HOTEL COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

FILED
AUG 24 2000

AUG 24 2000

## MEMORANDUM OPINION AND ORDER

Maria McGowan sues Hilton Hotels Corporation d/b/a Palmer House Hilton ("Hilton") for sexual harassment in violation of Title VII, 42 U.S.C. 2000e et. seq. McGowan claims she was subjected to a hostile work environment. Hilton moves for summary judgment pursuant to Fed. R. Civ. P. 56.

## BACKGROUND

The court views the record and draws all reasonable inferences in the light most favorable to the non-moving party. Fed.R.Civ.P. 56(c); see also Hill v. Am. Gen. Fin., Inc., No. 99 C 2682, 2000 WL 536670 at *2 (7th Cir., May 4, 2000).

### 1. McGowan's Employment at the Hotel

McGowan worked for Hilton as a room attendant in the housekeeping department from February 2, 1998 through August 16, 1999. Plaintiff's Answer to Defendant's LR 56.1(a) Statement of Uncontested Facts ("Pl. Facts"), ¶ 6. In August 1999, McGowan was permanently assigned to clean rooms on the eighth floor of the hotel. Defendant's 56.1(a)(3) Statement of Undisputed Facts ("Def. Facts"), ¶ 7. Kelly Ann O'Connor was McGowan's immediate supervisor. Id. If the hotel was

33

short of floor managers on any given day, others filled the position for the day, including Maynard Lindsey, the alleged sexual harasser. Id. at ¶ 8. Lindsey filled in as a floor manager approximately once a month. Id. Hilton has employed Lindsey for twelve years and he has been the Public Space Manager for eight years. Id. at ¶ 9. Lindsey is responsible for the cleanliness of hotel public areas. Id.

In 1999, Lindsey acted as a floor manager on the eighth floor approximately two times. Id. at ¶ 10. When Lindsey was not the floor manager on the eighth floor, McGowan saw him on the eighth floor approximately three to four times per week. Pl. Facts, ¶ 10. The housekeeping department offices are located on the 24th floor of the hotel. Lindsey's office was also located on the 24th floor. Id. McGowan saw Lindsey almost every day on the 24th floor when she received her work assignments. Id.

## 2. Hilton's Sexual Harassment Policy and Reporting Procedure

At the time McGowan began her employment, she went through an orientation program, which included the topic of sexual harassment. Id. at ¶ 11. Keith Elson, Director of Training, conducted the program. Def. Facts, ¶ 11. Elson also conducted annual mandatory sexual harassment training for all hotel managers and supervisors. Id. At the orientation, McGowan was told to report any sexual harassment. Id. at ¶ 12. McGowan received a copy of the Palmer House Hilton Handbook ("handbook") at the orientation. The handbook contained the Hilton's sexual harassment policy. The policy provides Hilton "will not tolerate any form of unlawful harassment against any Hilton staff member by anyone." Id. at ¶ 14. The policy describes sexual harassment as including "physical conduct such as patting, hugging, pinching or brushing against another's body." Pl. Facts, ¶ 14. The policy further provides:

> If you experience or witness any conduct which you feel may be inconsistent with this policy, Hilton encourages and expects you to notify immediately the Director or Assistant Director of Human Resources. Please take every step you can to make sure that your concern is well known to management . . . Any staff member who reports unlawful harassment or cooperates in an investigation of a complaint will be protected from retaliatory action."

Def. Facts Id. at ¶ 15. McGowan acknowledged in writing that she received the policy. Id. at ¶ 13.

### 3. Sexual Harassment Incidents

Beginning approximately March 1999, every time Lindsey saw McGowan he would grab McGowan, hug her by putting his hands on her lower back while face-to-face and rub up against her body in an effort to sexually arouse himself. Plaintiff's LR 56.1(b) Counter-Statement of Material Facts ("Pl. Counter-Facts"), ¶ 21. Lindsey referred to McGowan as "his girl." Id. Lindsey asked McGowan for her telephone number several times and asked to take McGowan "out." Id. at ¶ 22.

McGowan told Lindsey to stop touching her and that he made her feel uncomfortable. Id. at ¶ 23. There were times when McGowan went home crying because of Lindsey's actions. Id. at ¶ 24. McGowan cried so hard that her stomach hurt and she was sick. Id. At times she was unable to talk to her family when she came home from work. Id.

McGowan had a co-worker, Codell Wood, either hide McGowan from Lindsey or stand by her when Lindsey was around two to three times per week. Id. at ¶ 26. McGowan eventually feared leaving the eighth floor, and insisted that Wood accompany her. Id. at ¶ 29.

On Sunday, August 8, 1999, McGowan was alone cleaning a guest room on the eighth floor. Id. at ¶ 30. Lindsey entered the room and asked McGowan to select extra rooms to clean from a list he held in his hand. Id. When McGowan approached Lindsey to look at the list, Lindsey made a comment about her tattoos and then grabbed her shirt, ostensibly to look for a tattoo. Id. McGowan

3

pulled away, but Lindsey continued to grab her shirt until he pulled her shirt away from her chest; he looked down her blouse at her breasts. Id. Lindsey then left the guest room. Id. at ¶ 31. McGowan went back into the bathroom and began crying. Id. She then closed up the room and told Wood what happened. Id. McGowan also told Wood that she was going to call human resources on Monday and report Lindsey. Id. at ¶ 33.

That day after leaving work, McGowan telephoned Arshella Henderson, a co-worker, and told Henderson about the incident. Id. at ¶ 34. McGowan was upset during this conversation. Id.

The following day, Monday, August 9, 1999, was McGowan's day off. Id. at ¶ 35. She called the hotel and left a voice mail message for Elson. Id. The next day, McGowan arrived at work at approximately 8:00 a.m. Id. at ¶ 36. While on the 24th floor to receive her room assignments, McGowan was approached by Lindsey. Id. at ¶ 36. McGowan claims Lindsey approached her in a threatening and intimidating manner and sternly demanded to talk to her. Id. Hilton responds that Lindsey did not approach McGowan, but called her, and said, "I really need to see you." Defendant's Answer to Plaintiff's LR 56.1(b) Counter-Statement of Material Facts ("Def. Counter-Facts"), ¶ 36. McGowan was visibly upset by the encounter with Lindsey and felt she could no longer stay at work. Pl. Counter-Facts at ¶ 37.

McGowan asked O'Connor, her floor manager, if she could go home. Id. at ¶ 38. O'Connor told McGowan she was needed that day. Id. While speaking with O'Connor, Lindsey again approached McGowan and said, "I really need to see you." Id. at ¶ 39. McGowan suspected that Lindsey knew she was making a sexual harassment complaint against him. Id. at ¶ 41. McGowan then went down to the eighth floor. Id.

4

While on the eighth floor, Wood tried to calm McGowan. Id. at ¶ 42. McGowan remained upset about the incident and called O'Connor to tell her she was ill and wanted to go home. Id. at ¶ 43.

McGowan then returned to the 24th floor and told Ladelle Crawford that a manager was sexually harassing her, touching her, and rubbing against her. Id. at ¶ 44. McGowan told Crawford about the incident when Lindsey pulled her shirt down. Id. at ¶ 45. Crawford allowed McGowan to leave the hotel through a back door. Id. at ¶ 46.

### 4. The Investigation

The same day McGowan complained to Crawford, Crawford contacted Keith Elson in human resources and reported what McGowan had told her. Id. at ¶ 47. Elson told Crawford to write out a statement. Id. Elson then called McGowan that day and spoke with her about the complaints. Id. at ¶ 49. McGowan told Elson about the incident with Lindsey. Id. McGowan also told Elson about various other acts of harassment by Lindsey. Id. at ¶ 51. Elson told McGowan he would investigate her allegations and would try to get back to her by the end of the week. Id. at ¶ 54. Elson told McGowan to stay home during the investigation; she was not paid during this investigation. Id. at ¶ 57.

That same day, Elson met with Lindsey to discuss McGowan's allegations. Id. at ¶ 71. Lindsey denied all allegations. Id. Elson obtained a statement from Lindsey. Id. at ¶ 72. Over the next several days, Elson met with Wood, Henderson, Crawford and O'Connor regarding McGowan's claims and asked each of them to provide him with a written statement. Id. at ¶ 74.

The investigation revealed that employees referred to Lindsey as "an old pervert." Id. at ¶ 79. Wood frequently heard other employees complain about Lindsey touching them. Id. at ¶ 80.

Wood stated that she observed Lindsey talk to McGowan in a "touchy, touch, up-close type thing" that made Wood uncomfortable just watching. Id. at ¶ 82. Henderson saw Lindsey hug McGowan on more than one occasion, including once outside the hotel. Id. at ¶ 84. Henderson saw Lindsey come up behind McGowan and grab her around the waist. Id. at ¶ 90. Henderson looked as if she did not want to be bothered. Id. On other occasions, Henderson saw Lindsey hug McGowan; Lindsey approached from the front, hugged her with both arms, and said, "hey, my girl Marie." Id. at ¶ 91. McGowan's facial expression indicated she disliked the hug. Id. Henderson had the impression Lindsey had a special interest in McGowan. Id. at ¶ 93.

When the investigation concluded, Elson met with Lindsey again on Friday, August 13, 1999, for approximately 45 minutes. Id. at ¶ 95. Elson prepared a written warning and had Lindsey sign it. Id. Elson reviewed the Hilton's sexual harassment policy with Lindsey and had him sign a document acknowledging that he received and read the sexual harassment policy. Id. Elson told Lindsey to "stay away from [McGowan]." Id. at ¶ 96. Elson also warned Lindsey that "further instances of sexual harassment allegations could lead to disciplinary action up to and including termination of employment." Def. Facts, ¶ 97.

On August 13, 1999, Elson telephoned McGowan at home. Pl. Counter-Facts at ¶ 98. Elson advised McGowan that he investigated her complaints, but he could not substantiate her allegations. Id. Elson told McGowan that he spoke with Lindsey and that Lindsey would not bother her again. Id. Elson told McGowan to return to work on Monday, August 16. Id. at ¶ 100. McGowan explained to Elson that she did not believe Lindsey would stop the sexual harassment just because Elson talked to him. Id. at ¶ 101. She also told Elson that she did not think it was fair for him to tell her to return to work under the circumstances. Id. at ¶ 102. McGowan did not return to work

6

because she did not feel safe at the hotel and did not believe Hilton took any measures to stop the sexual harassment. Id. at ¶ 109.

## DISCUSSION

**1.     Summary Judgment Standard**

Summary judgment is permissible when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The nonmoving party cannot rest on the pleadings alone, but must identify specific facts that raise more than a mere scintilla of evidence to show a genuine triable issue of material fact. See Murphy v. ITT Technical Ser., Inc., 176 F.3d 934, 936 (7th Cir. 1999); Cornfield v. Consolidated High Sch. Dist. No. 230, 991 F.2d 1316, 1320 (7th Cir. 1993). Summary judgment is appropriately entered against a party who fails to demonstrate the existence of an essential element of her case. Gleason v. Mesirow Fin., Inc., 118 F.3d 1134, 1139 (7th Cir. 1997). Put another way, summary judgment is the stage of a lawsuit where a party must present evidence that could convince a trier of fact to accept her version of events. The court views the record and draws all reasonable inferences in the light most favorable to the non-moving party. Fed.R.Civ.P. 56(c).

**2.     The Sexual Harassment Standard**

Title VII prohibits an employer from discriminating against any individual with respect to compensation, terms, conditions or privileges of employment because of his or her sex. 42 U.S.C. § 2000e-2(a)(1); Parkins v. Civ. Constructors of Ill., Inc., 163 F.3d 1027, 1032 (7th Cir. 1998). When the workplace is permeated with discriminatory actions that are sufficiently severe to alter the conditions of the victim's employment, Title VII is violated. Oncale v. Sundowner Offshore Serv., Inc., 118 S.Ct. 2275, 2283 (1998).

7

An employer is subject to vicarious liability for an actionable hostile environment created by a supervisor with immediate authority over the employee. Burlington Indus., Inc. v. Ellerth, 524, U.S. 742, 765 (1998); Faragher v. City of Boca Raton, 524 U.S. 775, 807 (1998). When no tangible employment action is taken, a defending employer may have an affirmative defense. Id. The defense has two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to otherwise avoid harm. Id. No affirmative defense is available, however, when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment. Id.

3. **McGowan Suffered no Tangible Employment Action**

As an initial matter, McGowan argues that Hilton "fail[ed] to address [the issue of whether McGowan suffered a tangible employment action . . . thereby waiving any argument to summary judgment on plaintiff's claim." Plaintiff's Answer Brief in Opposition to Defendant's Motion for Summary Judgment ("Pl. Resp."), p. 4. This argument is without merit. Hilton impliedly argued that McGowan had not suffered a tangible employment action when it argued the Ellerth and Faragher affirmative defense. Indeed, Hilton specifically argued that "[e]mployers have an affirmative defense . . . when the plaintiff has not suffered any tangible job detriment." Defendant's Memorandum of Law in Support of its Motion for Summary Judgment ("Def. Br."), p. 3. Hilton has not waived its argument that McGowan suffered no tangible employment action.

8

McGowan contends that she suffered a tangible employment action when Elson told her to stay home during the investigation, resulting in the loss of five days' wages. Pl. Resp. at 5. This argument fails as a matter of law.

An employer is only vicariously liable for a tangible employment action undertaken by the harassing supervisor. Johnson v. West, 218 F.3d 725, 731 (7th Cir. 2000) (citing Faragher, 524 U.S. at 808); Maple v. Publications Int., LTD, 2000 WL 1029112 at *4-5 (N.D.Ill. July 25, 2000) (Conlon, J.). There is no evidence that Lindsey played any role in Elson's decision to have McGowan stay home during the investigation. Thus, even if Elson's order to remain home were a tangible employment action, it was not taken for any discriminatory reason and does not vitiate the Ellerth and Faragher affirmative defense. See Lissau v. Southern Food Serv. Inc., 159 F.3d 177, 182 (4th Cir. 1998).

McGowan's next argument is that she was constructively discharged. It is unnecessary to reach the issue of whether a constructive discharge constitutes a tangible employment action under Ellerth and Faragher because McGowan has failed to establish she was constructively discharged. "To establish a claim for constructive discharge under Title VII, a plaintiff must prove that his working conditions were so intolerable as a result of unlawful discrimination that a reasonable person would be forced into involuntary resignation." Tutman v. WBBM-TV, Inc./CBS Inc., 209 F.3d 1044, 1050 (7th Cir. 2000). Thus, whether an employee was constructively discharged is judged by an objective standard. Further, "[w]orking conditions for constructive discharge must be even more egregious than the high standard for hostile work environment because 'in the 'ordinary' case, an employee is expected to remain employed while seeking redress.'" Id.

McGowan refused to return to work when Elson called her after the investigation was completed and disciplinary action had been taken against Lindsey. In short, McGowan did not give the actions taken by Hilton any chance of working: (1) warning Lindsey about the consequences of retaliation; (2) having Lindsey review and sign Hilton's sexual harassment policy; (3) giving Lindsey a written warning that any further allegations of harassment could lead to disciplinary action, including discharge; (4) directing Lindsey not to have any further contact with McGowan; (5) instructing Lindsey not to be on the eighth floor while McGowan was there; and (6) removing Lindsey as McGowan's substitute floor manager. McGowan was informed that Lindsey was not to have contact with her, that any retaliation would be taken very seriously, and to report any further harassment. Under these circumstances, McGowan fails to establish that a reasonable person would find the working conditions so intolerable so as to be forced into involuntary resignation. See, Tutman, 209 F.3d at 1050 (plaintiff's refusal to return to work after the employer punished the harasser and promised to segregate the plaintiff from the harasser was not constructive discharge); see also Phillips v. Taco Bell Corp., 156 F.3d 884, 890 (7th Cir. 1998) ("While [plaintiff] may not have been aware of [employer's disciplinary actions], she had an obligation not to assume the worst and jump to conclusions too quickly").

McGowan relies upon Quiroz v. Ganna Construction, 1999 WL 59836 (N.D.Ill. Jan. 27, 2000) (Coar, J.) and Pyle v. Market USA, Inc., 1996 U.S. Dist. LEXIS 1285 (N.D.Ill. 1999) (Nordberg, J.), in arguing that the mere presence of the harasser can create a hostile work environment. However, the cited cases do not stand for the proposition that the mere presence of the harasser constitutes a constructive discharge, but only a hostile work environment. In any event, the actions alleged in Quiroz and Pyle are exponentially more severe than those alleged by McGowan.

10

See Quiroz, 1999 WL 5986 at *8 - 9 (harasser masturbated in front of the plaintiff and raped her); Pyle, 1996 U.S. Dist. LEXIS at *4 (plaintiff subjected to sexually explicit comments, vulgar language, rape threats and was physically attacked).

### 4. Hilton's Response to McGowan's Complaint of Sexual Harassment

The first requirement of the Ellerth/Faragher affirmative defense is "the employee exercised reasonable care to prevent and correct promptly any sexually harassing behavior." Ellerth, 524 U.S. at 765. As a threshold matter, McGowan argues that her statement to Lindsey not to touch her was sufficient to satisfy the requirement that "those employees authorized by the [sexual harassment] policy to act in response to complaints did so act when put on notice of a problem, and that their actions constituted a reasonable response under the circumstances." Pl. Resp. at 11 (citing Coates v. Sundor Brands, Inc., 164 F.3d 1361, 1369 n. 5 (11th Cir. 1999). This argument is without merit.

It is unreasonable to expect a person accused of sexual harassment to report his own harassment. Parkins, 163 F.3d at 1037; see also Hetreed v. Allstate Ins. Co., 1999 WL 311728 at *6 (N.D.Ill. 1999) (Zagel, J.) (to impute the harassing supervisor's knowledge to the employer is to render the Ellerth and Faragher defense moot). The fact that McGowan asked Lindsey to stop and he failed to do so does not mean Hilton fails to meet the first requirement of the affirmative defense. It is undisputed that Hilton had in place a reasonable sexual harassment policy and training procedures. Rather, McGowan contends Hilton's investigation and corrective measures were inadequate. Pl. Resp. at 12 - 15. McGowan claims that Hilton, and specifically Elson, merely "went through the motions of an investigation." Id. at 13.

On August 9, McGowan left a voice mail message for Elson, but did not reveal the reason for her call. On August 10, McGowan complained about the harassment to Crawford. That same day,

11

Crawford informed Elson of the incident. Elson called McGowan the same day. By August 13, Elson had interviewed Lindsey and every witness McGowan had named, as well as O'Connor. Though there were instances of inappropriate behavior observed and other employees referred to Lindsey as "the old pervert," no specific acts of sexual harassment were corroborated. Nevertheless, Hilton reviewed the sexual harassment policy with Lindsey and had him sign it, gave Lindsey a written warning that stated that he would be further disciplined and perhaps fired for any further harassment allegations, and directed Lindsey not to have further contact with McGowan. These actions were taken immediately after McGowan's complaint. McGowan was promptly informed that Lindsey had been warned to stay away from her and that he no longer would supervise her.

Given the circumstances, Hilton's actions were a reasonable response to McGowan's complaint. See Tutman, 209 F.3d at 1049 (completion of investigation within two weeks resulting in letter of reprimand, sensitivity training and apology to victim was appropriate remedial action); Savino v. C.P. Hall Co., 199 F.3d 925, 930 (7th Cir. 1999) (where no corroboration of events, reprimand of harasser and warning not to harass or retaliate were sufficient). As in Savino, the alleged harasser had an exemplary employment record and was not previously accused of sexual harassment. According to McGowan, Lindsey's mere presence could not be tolerated and the only appropriate corrective measure would have been for Hilton to fire Lindsey. Given Lindsey's employment record and the lack of a corroborating eyewitness to the blouse incident, McGowan's argument fails. It is not appropriate for the court to substitute its own judgment for Hilton's as to the wisdom of Hilton's choice of corrective measures. Morrow v. Wal-Mart Stores, Inc., 152 F.3d 559, 564 (7th Cir. 1998).

In sum, Hilton's prompt response to McGowan's allegations was reasonable as a matter of law. Tutman, 209 F.3d at 1049. Thus, Hilton satisfies the first prong of the Ellerth/Faragher affirmative defense.

## 5. Failure to Take Advantage of Corrective Measures

The second prong of the Ellerth/Faragher affirmative defense requires the employer to establish "the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Ellerth, 524 U.S. at 765. McGowan unreasonably failed to take advantage of Hilton's corrective action. The question is whether a reasonable person would have found the working conditions at the hotel so intolerable after Hilton's corrective actions she would be forced to resign. Tutman, 209 F.3d at 1050. While it may not be unreasonable for McGowan to feel apprehensive or uncomfortable about returning to work, it was unreasonable for her to quit her job without giving Hilton's corrective measures an opportunity. See Phillips, 156 F.3d at 890 (plaintiff obligated not to assume the worst regarding employer's corrective measures). McGowan's allegations that Lindsey could still harass her are merely speculation. See Marsicano v. Am. Society of Safety Engineers, 1998 WL 603128 at *8 (N.D.Ill. 1998) ("whether the [actions] would have proved effective or, indeed, whether [the harasser's] conduct would have ceased . . . remain open questions"). As a result, Hilton has satisfied the second prong of the Ellerth/Faragher affirmative defense.

## **CONCLUSION**

For the foregoing reasons, the motion for summary judgment is granted.

ENTER:

*[signature]*
Suzanne B. Conlon
United States District Judge

August 23, 2000